NOT DESIGNATED FOR PUBLICATION

No. 126,047

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FOSTER EVERETTE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Seward District Court; LINDA P. GILMORE, judge. Not submitted for oral argument.
Opinion filed June 7, 2024. Affirmed.

*Joseph T. Welsh*, of Sublette, for appellant.

*Russell Hasenbank*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: After an evidentiary hearing, the Seward County District Court denied Foster Lee Everette's motion for habeas corpus relief from a jury verdict finding him guilty of second-degree murder in the strangulation death of his sometime girlfriend. On appeal, Everette contends the district court erred because his appointed lawyer in the criminal case both labored under a conflict of interest and chose not to introduce exculpatory evidence for the jury's consideration. Given the standards governing habeas corpus motions under K.S.A. 60-1507, we conclude Everette has failed to show his legal representation leading up to and during the criminal trial was compromised in a way entitling him to relief. We, therefore, affirm the district court.

1

The theories of the crime and of the defense are almost deceptively straightforward. In early January 2015, a close relative of Andrea Garrison found her body apparently hanged from a rod in a bedroom closet of her home. The State contended Everette had killed Garrison, with whom he had an intimate, if rocky, relationship, and staged the scene to look like a suicide. The State charged Everette with premeditated first-degree murder. The defense countered that Garrison had, in fact, committed suicide.

In a four-day trial beginning in late November 2015, the jurors convicted Everette of intentional second-degree murder—the only lesser included offense the district court presented for their consideration. The district court later sentenced Everette to serve 272 months in prison followed by postrelease supervision. Everette filed a direct appeal, and this court affirmed the conviction and sentence. The Kansas Supreme Court denied review. *State v. Everette*, No. 115,645, 2018 WL 4517575, at *1 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. 1350 (2019).

Our earlier opinion includes an outline of the procedural history of the direct criminal case and an extensive discussion of the trial evidence. We assume the reader's general familiarity with that information and offer a few points of reference for context. The State charged Everette in late March 2015, and the district court appointed Razmi Tahirkheli, an experienced criminal defense lawyer, to represent him a few days later.

During the trial, Dr. Hubert Peterson, the county coroner, testified that he autopsied Garrison's body and concluded the cause of death was asphyxiation and the mechanism was a belt found around Garrison's neck. But Dr. Peterson declined to offer an expert opinion based on his examination as to whether the death was a suicide or a homicide. He testified the body showed injuries consistent with a recent physical confrontation or struggle. Law enforcement investigators found no suicide note. Several

2

witnesses testified to the volatile relationship between Everette and Garrison that apparently had included his physical abuse of her.

The State introduced text messages between Everette and Garrison shortly before her death in which he angrily accused her of having an intimate relationship with another man. Directly pertinent to this appeal, the State called Shroy Spradley as a trial witness; he told the jury that the day Garrison died, Everette said he intended to kill her by strangling her with a belt and making it look like suicide. Everette testified in his own defense and denied killing Garrison. He acknowledged their relationship had been a difficult one. Everette told the jurors Garrison had recently lost her job, needed money to pay her rent, abused illegal drugs, and was facing criminal charges—circumstances otherwise generally corroborated in the trial evidence—that he suggested rendered her sufficiently despondent she committed suicide.

After the Kansas Supreme Court denied review, Everette timely filed a motion under K.S.A. 60-1507 in June 2020 collaterally challenging the conviction. The district court appointed a new lawyer to represent Everette in the 60-1507 proceeding and held an evidentiary hearing in August 2022. Everette presented testimony from the lead law enforcement investigator in Garrison's death and from Tahirkheli. The State presented no countering witnesses. About a month later, the district court issued a lengthy written order denying the motion. Everette has appealed the ruling, and that is what we now have in front of us.

LEGAL ANALYSIS

On appeal, Everette raises two issues: (1) Tahirkheli labored under an impermissible conflict of interest because he represented Spradley as a defendant in another criminal case when he was appointed to represent Everette in late March 2015 and continued to do so until Everette's arraignment in mid-August 2015; and (2) Tahirkheli provided constitutionally ineffective representation at trial because he

3

unsuccessfully sought to admit as exhibits various text messages from Garrison shortly before her death. Before turning to those issues specifically, we lay out the general legal principles governing habeas corpus relief under K.S.A. 60-1507 based on ineffective legal representation and the more particularized principles applicable to conflicts of interest.

Because the district court held an evidentiary hearing on Everette's 60-1507 motion, we accept the resulting findings of fact to the extent they are supported with substantial competent evidence. But we make an unlimited review of the determinative legal issues based on those factual findings. *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

*1. Legal Principles*

*A. Constitutionally Ineffective Representation*

To prevail on an ineffectiveness claim, a convicted defendant must show both that his or her legal representation "fell below an objective standard of reasonableness" guaranteed by the right to counsel in the Sixth Amendment to the United States Constitution and that absent the substandard lawyering there is "a reasonable probability" the outcome in the criminal case would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Phillips*, 312 Kan. 643, 676, 479 P.3d 176 (2021); *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3, 4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance). Reasonable representation demands that degree of "skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland*, 466 U.S. at 688. A reasonable probability of a different outcome "undermine[s] confidence" in the result and marks the criminal proceeding as fundamentally unfair. 466 U.S. at 694. The movant, then, must prove both

constitutionally inadequate representation and sufficient prejudice attributable to that representation materially calling into question the resulting convictions.

As the United States Supreme Court and the Kansas Supreme Court have stressed, review of the representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should a lawyer's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among arguably suitable options. *Strickland*, 466 U.S. at 690-91. Whether a lawyer has made reasoned strategic decisions bears on the competence component of the *Strickland* test. In exceptionally rare circumstances, a reviewing court could find a defense strategy so obviously devoid of value as to be constitutionally suspect despite the lawyer's deliberative choice. See *State v. Cheatham*, 296 Kan. 417, 446, 292 P.3d 318 (2013); *State v. Hargrove*, 48 Kan. App. 2d 522, 556-57, 293 P.3d 787 (2013).

*B. Conflicts of Interest*

The rules for impermissible conflicts of interest are more intricate and depend, in part, on the nature of the conflict. We detailed those considerations in *Sola-Morales v. State*, No. 118,451, 2019 WL 6041443, at *6 (Kan. App. 2019) (unpublished opinion), and appropriate that discussion here:

> "A criminal defendant may obtain relief in a habeas corpus action if his or her lawyer in the underlying case labored under an 'active' conflict of interest and the defendant either unsuccessfully objected to the representation at the time or can show the conflict compromised the representation. *State v. McDaniel*, 306 Kan. 595, 609, 395 P.3d 429 (2017). Criminal defendants are constitutionally entitled to be represented by lawyers who have no conflicts of interest that would divert them from fully advocating on their

clients' behalf. *Sola-Morales*, 300 Kan. at 883; *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014). Such a conflict impinges on the Sixth Amendment right to counsel. *Mickens v. Taylor*, 535 U.S. 162, 166-67, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

"Relying on *Mickens*, the Kansas Supreme Court has recognized three categories of active conflicts of interest in criminal cases: (1) the district court permits a lawyer to represent multiple clients with antagonistic interests in the same proceeding despite an objection to the representation; (2) a lawyer represents multiple clients but no objection has been lodged; and (3) the representation of a current client conflicts either with a duty owed a former client or with the lawyer's own personal or financial interests. *Sola-Morales*, 300 Kan. at 884. If the circumstances fall in the first category, the defendant is entitled to relief without showing actual prejudice. In the second instance, the defendant has to show that the conflict adversely affected his or her legal representation—a lower standard than the *Strickland* test for prejudice triggering a remedy. See *Fuller v. State*, 303 Kan. 478, 487, 363 P.3d 373 (2015)."

Here, as was true for the lawyer in *Sola-Morales*, Tahirkheli did not represent multiple defendants in the same criminal case, so any conflict must fit in the third category. We, again, borrow from *Sola-Morales*:

"The Kansas Supreme Court has referred to that sort of conflict of interest as the '*Mickens* reservation' because the United States Supreme Court has not expressly identified whether the defendant must show merely an adverse effect on his or her representation, as required under *Cuyler*, or must show sufficiently deficient representation to undermine confidence in the outcome of the criminal case, as required under *Strickland*. *Fuller*, 303 Kan. at 487; *Sola-Morales*, 300 Kan. at 884. The Kansas Supreme Court has yet to resolve the *Mickens* reservation by endorsing one or the other standard. See *State v. Moyer*, 309 Kan. 268, 279-80, 434 P.3d 829 (2019) (recognizing lack of governing standard); *State v. Lindsay*, No. 117,826, 2019 WL 2399477, at *7 (Kan. App. 2019) (unpublished opinion) (noting Kansas Supreme Court has treated standard as unresolved issue).

"The Kansas Supreme Court most recently discussed the *Mickens* reservation in *Moyer* and identified three tests different courts have used to determine an 'adverse effect' on representation requiring relief, assuming the *Cuyler* standard rather than the *Strickland* standard were to apply. 309 Kan. at 283-84. The most common test recognizes an adverse effect when the conflicted lawyer failed to undertake 'some "plausible alternative defense strategy or tactic that might have been pursued"' and made that choice because of the conflict. *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994); see *Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996); *Moyer*, 309 Kan. at 283. The second formulation adds a requirement that the alternative strategy or tactic be 'objectively reasonable.' *Moyer*, 309 Kan. at 283; see *United States v. Nicholson*, 611 F.3d 191, 197 (4th Cir. 2010). The third test, apparently unique to the Seventh Circuit, simply requires a showing of a reasonable likelihood the lawyer's representation would have been different had there been no conflict. *Moyer*, 309 Kan. at 283-84; see *Hall v. United States*, 371 F.3d 969, 974 (7th Cir. 2004).

"The *Moyer* court acknowledged the three tests and, in particular, the discussion of them in *West v. People*, 341 P.3d 520 (Colo. 2015). But the court then recognized that Moyer would lose under each of three formulations of adverse effect and didn't identify one of them as the legally appropriate standard. *Moyer*, 309 Kan. at 284-85. So in *Mickens* reservation cases—where the defense lawyer had a conflict based on the past representation of another client or on some personal or financial interest—the Kansas Supreme Court appears to have left open whether the *Strickland* ineffectiveness standard or the *Cuyler* adverse effect standard applies and if *Cuyler* applies, the test for assessing adverse effect. We see *Moyer*'s ecumenical approach to the test for adverse effect as superseding *State v. Cheatham*, 296 Kan. 417, 452, 292 P.3d 318 (2013), in which the court identified and considered only the Seventh Circuit test." 2019 WL 6041443, at *7.

The standard to be applied to a conflict of interest falling within the *Mickens* reservation remains unsolved. The parties have not directed us to a case in which the Kansas Supreme Court has decided the issue, and we have found none. The United States Supreme Court does not appear to have settled the *Mickens* reservation standard, either. See *Watson v. Fairbairn*, No. 23-1392, 2024 WL 1005070, at *5 & n.2 (10th Cir. 2024) (unpublished opinion) (noting *Mickens* reservation standard remains open question).

7

*2. Tahirkheli's Alleged Conflict of Interest*

On appeal, Everette contends Tahirkheli had an impermissible conflict of interest during the trial because of his past representation of Spradley. But Everette has not shown that Tahirkheli's representation of him was in any way compromised because of the alleged conflict—a necessary legal requirement for relief. The claim, therefore, fails.

The parties agree that Tahirkheli withdrew from representing Spradley as a defendant in a different criminal case in mid-August 2015—about four and half months after he began representing Everette and about three and a half months before Everette's trial. Everette's preliminary hearing was held during that period of dual representation, but Spradley did not testify then. Under those circumstances, Tahirkheli had a conflict of interest while he represented both Spradley and Everette, given what Spradley asserts Everette told him about harming Garrison.

After Tahirkheli no longer represented Spradley, he had ongoing duties to Spradley as a former client, such as maintaining the confidentiality of their attorney-client communications. It's less obvious, however, that Tahirkheli had a continuing obligation to Spradley that somehow impeded his representation of Everette leading up to and during the trial.

We, nonetheless, assume Tahirkheli had an active conflict at the time of Everette's trial coming within the *Mickens* reservation based on his then-concluded representation of Spradley. Our assumption alone does not entitle Everette to relief. Under the *Mickens* reservation, Everette must show, at the very least, that Tahirkheli's conflicting interests adversely affected how he represented Everette during the trial. Everette's appeal falters on this requirement. Everette has not endeavored to explain how any duty Tahirkheli continued to owe Spradley as a former client compromised Tahirkheli's representation of him in the trial. Absent such a showing, Everette cannot prevail on his argument.

8

As we have explained, an appellate court will grant relief without a showing of at least some prejudice only when a lawyer represents codefendants in the same case and someone calls a conflict based on the clients' antagonistic interests to the district court's attention and the district court then fails to act. Otherwise, the complaining client must show that the conflict prompted the lawyer to curtail his or her representation in some adverse way. Everette has not argued that Tahirkheli would have done something different in defending him during the trial but for his past representation of Spradley. The omission legally undermines his claim for relief.

On appeal, Everette tries to skirt that result by pointing out that Tahirkheli represented both him and Spradley at his preliminary hearing. But Spradley did not testify at the preliminary hearing. And Everette does not suggest either the preliminary hearing or the jury trial was compromised in any tangible way because of the dual representation.

Similarly, Everette contends the record on appeal does not establish that he validly waived any conflict Tahirkheli may have had arising from his representation of Spradley. At the 60-1507 hearing, Tahirkheli testified that following a colloquy with the district court at the arraignment in August 2015, Everette orally waived any conflict. We are hamstrung in assessing this claim because the record does not include a transcript of the arraignment. We gather the electronic recording system failed, and the parties did not attempt to prepare and submit to the district court a reconstructed statement of the arraignment, as permitted under Supreme Court Rule 3.04 (2024 Kan. S. Ct. R. at 24). Rather than delving into the sufficiency of the waiver without a detailed record, we simply point out that the absence of a waiver does not in itself entitle Everette to relief. That is, a valid waiver of any conflict could well bar Everette's claim, but an ineffective waiver does not amount to a direct counterpoint requiring a substantive remedy. Everette would still have to show the conflict caused Tahirkheli to compromise his trial representation.

9

We find that Everette has failed to show any trial prejudice tied to Tahirkheli's past representation of Spradley. The district court, therefore, correctly denied relief on the claim.

*3. Tahirkheli's Alleged Ineffective Representation at Trial*

On appeal, Everette contends Tahirkheli's representation of him during the trial was constitutionally ineffective and points to the lawyer's failed effort to introduce a series of text messages from Garrison shortly before her death as an exhibit for the jury's consideration. The parties agree some of the text messages contain language suggesting Garrison was threatening to kill herself or displaying suicidal ideation. The content would have supported the defense theory of Garrison's death.

During the trial Tahirkheli offered the messages as evidence, drawing an objection from the State for lack of foundation. Tahirkheli told the district court he did not have a witness from Garrison's telephone service provider or another witness who could establish an evidentiary foundation for the records. The district court sustained the objection, so the jurors never saw the messages or otherwise learned of their content. In closing argument, Tahirkheli told the jurors that although the State had possession of Garrison's smartphone, the prosecutor didn't offer records of her text messages. As we have described, the State did present various messages Everette sent Garrison.

At the hearing on Everette's 60-1507 motion, Tahirkheli testified that he made a strategic decision about Garrison's text messages: He would offer them without having a witness available to lay an adequate foundation for them in anticipation the State would object, and he would then argue to the jurors that the State was trying to hide relevant information supporting the defense. Tahirkheli explained he believed the admission of Garrison's messages could open the door for additional communications from Everette that would be detrimental to the defense. If the State had not objected to the text

10

messages—contrary to his expectation—Tahirkheli testified that he was then prepared to tell the jurors they confirmed Garrison's intent to commit suicide.

Tahirkheli described a reasoned, if unusual, trial strategy with respect to Garrison's text messages. Given the great deference accorded strategic choices under the *Strickland* standard for assessing constitutional ineffectiveness, we are not prepared to say Tahirkheli's decision lacked an anchor in at least a colorably competent trial tactic to deal with evidence that might wind up both advancing the defense theory in some ways and impeding it in other ways. As this court has pointed out:

> "It is not enough to show that other lawyers might have employed different trial strategies. In any given criminal case, there may be, and usually are, multiple approaches to diffusing bad evidence or shaping favorable evidence to motivate a jury to acquit. And each of those approaches can be considered reasonable. In short, there seldom is a single key to unlocking the hearts and minds of jurors. (In some cases, the facts may be such that no key will fit.) The test, of course, cannot be grounded in hindsight: Simply because the trial resulted in a conviction, defense counsel's strategic decisions should not be condemned as unreasonable." *Long v. State*, No. 102,909, 2011 WL 434014, at *2 (Kan. App. 2011) (unpublished opinion).

Similarly, we found that a defense lawyer's decision not to seek pretrial exclusion of a child victim's identification of the defendant to law enforcement investigators entailed a reasoned, if ultimately unsuccessful, strategy in a sex offense prosecution. *Bowles v. State*, No. 110,203, 2014 WL 1708041, at *2 (Kan. App. 2014) (unpublished opinion) (The lawyer "made a reasoned election between options, and although the strategy did not yield the ultimate outcome he or Bowles had sought, the decision cannot be characterized as constitutionally ineffective representation.").

Tahirkheli's execution of the strategy, as reflected in the transcript of his closing argument to the jury, was considerably less vivid than his recollection of it during the 60-

11

1507 hearing. But that does not undercut the tactical considerations that went into the trial strategy. We decline to endorse or otherwise grade the strategy apart from concluding it did not render Tahirkheli's representation of Everette constitutionally ineffective. That is sufficient to turn away Everette's appellate challenge to the district court's denial of the 60-1507 motion on this issue. We say no more.

Affirmed.